**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| ADRIAN BACON, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br>       v.<br><br>ALL WEB LEADS, INC.<br><br>                    Defendant. | Case No. 1:20-cv-00043<br><br>**ORIGINAL CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL CLASS ACTION COMPLAINT

COMES NOW Plaintiff Adrian Bacon (hereinafter referred to as "Bacon" or "Plaintiff"), on behalf of himself and all similarly situated individuals, and alleges on personal knowledge, investigation of his counsel, and on information and belief, the following claims against All Web Leads, Inc. ("AWL" or "Defendant"):

### INTRODUCTION

1.      This case involves Defendant All Web Leads' use of dishonest marketing practices in order to gain access to consumers' cellular phone numbers for purposes of placing "tens of thousands" of autodialed telemarketing calls to those consumers for the benefit of Defendant and its insurance industry customers. As described more fully below, Defendant owns and operates various websites that are devoted to offering insurance quotes for specific types of insurance that consumers allegedly search for over the Internet. Through one of Defendant's websites and/or third-party call centers, Defendant unlawfully obtained the cell phone numbers of Plaintiff and the Class (as defined below) for purposes of making autodialed telemarketing calls to Plaintiff and the Class without their prior express written consent for the benefit of Defendant and its insurance

1

industry customers in plain violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

2.    Plaintiff brings this class action against Defendant to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* and invaded Plaintiff's privacy by causing unsolicited calls to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message.

3.    Defendant made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") and/or a pre-recorded voice for the purpose of soliciting business from Plaintiff.

4.    Additionally, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do-Not-Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement.

5.    Plaintiff Adrian Bacon is one of the millions of consumers who have listed telephone numbers on the National Do-Not-Call Registry. Nonetheless, he has received numerous telemarketing sales calls on his cell phone made by, or on behalf of, Defendant.

6.    The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

7.    Plaintiff ADRIAN BACON is a natural person and citizen of Orange, California.

8.    Defendant, ALL WEB LEADS, INC. is a corporation existing under the laws of the State of Delaware with its principal place of business in Austin, Texas. Defendant may be served with process through service upon its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

9.    Plaintiff does not yet know the identity of Defendant's employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. They are named tentatively, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("American Blastfax"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

10.   Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or

employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

14.     Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR CLAIMS

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     Specifically, the TCPA restricts telephone solicitations (i.e., telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

18.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the National Do Not Call Registry.

19.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

20.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

21.     There are just a handful of elements that need to be proven for violations of the Do Not Call provision of the TCPA:

### DO NOT CALL VIOLATIONS OF THE TCPA

22.     <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

23.     <u>Calls to Residential Lines on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

24.     <u>Or, Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

25.     <u>The Affirmative Defense of Prior Express Consent</u>. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("*Satterfield*")). "Prior express consent is an affirmative defense for which the defendant bears the burden of proof." *See Grant v. Capital Management Services, L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); *see also Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

## COMMON FACUTAL ALLEGATIONS

26.     Defendant advertises itself as the premier Customer Acquisition Marketing business in the U.S. insurance industry that delivers consumers or "leads" to its insurance industry customers every day. Specifically, Defendant specializes in generating leads by placing telemarketing calls to consumers who might be interested in purchasing insurance, and then transferring those calls to customers of AWL, who are typically insurance agents.

27.     Defendant's business practices include making "tens of thousands" of autodialed telemarketing calls to leads every day in order to inquire whether the consumer is interested in purchasing insurance, check the accuracy of their contact information, and determine whether the consumer is interested in speaking with an agent about their insurance needs. After Defendant "qualifies" the lead, Defendant completes a live transfer of the consumer's phone call to one of its insurance industry customers.

28.     One of the methods in which Defendant generates leads is through the utilization of Internet marketing. Defendant owns and operates various websites that are devoted to offering

insurance quotes for specific types of insurance that consumers search for over the Internet. One of the websites that Defendant owns and operates is www.insurancequotes.com.

29.     Upon information and belief, Defendant also engages and works with third-party call centers to contact consumers who never inquired about insurance through *any* medium. In one instance, a third party, utilizing a sophisticated automated voice response system, contacts consumers and attempts to illicit a positive response from each when the computer asks whether that individual is interested in receiving information about insurance. The computer then immediately forwards the caller's information as a positive hit to Defendant, who then places a subsequent call to that consumer for the purpose of making a sales pitch. Defendant and/or the third parties believe they have circumvented the TCPA and have legal consent to place the calls to these individuals.

30.     The problem is, on information and belief, the call center forwards contact information for any live body who answers the call and communicates with the automated system, regardless of whether that person gave valid consent to receive subsequent marketing calls from Defendant. Furthermore, there is no question the initial calls from the call centers are placed in violation of the TCPA. Therefore, the call centers (agents) are also liable for violating the TCPA, as are the principals (Defendant).

31.     In Defendant's overzealous attempt to market its services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Worse yet, Defendant placed (and continues to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

32.     Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFF ADRIAN BACON

33.     On or about March 20, 2013 Plaintiff registered his cellular phone number with the area code (714) and ending in 1644 with the National Do Not Call Registry.

34.     Plaintiff is the regular carrier and exclusive user of the telephone assigned the number ending in 1644. The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

35.     Plaintiff has never had a business relationship with Defendant.

36.     Plaintiff never provided Defendant with prior express consent to contact him on his phone via a text message or a telephone call.

37.     Nonetheless, Defendant called Plaintiff multiple times on his cell phone attempting to sell Plaintiff insurance products.

38.     Specifically, Plaintiff received two calls from a prerecorded voice avatar system. Plaintiff did not stay on the line for the first call, but he did for the second one. The avatar said "Hi my name is Justin calling from lowerinsurancerates.com" and asked Plaintiff if he was looking to save 30% for auto insurance. The avatar asked Plaintiff a series of prequalifying questions including Plaintiff's name, vehicle year, make and model, if he owned a home, and what his phone number was. The avatar then told Plaintiff it would transfer him to a specialist.

39.     The call was then transferred to another system which asked a series of questions and the avatar punched in answers to those questions automatically, as if it was typing

information into some sort of online portal to try and make it look like Plaintiff had consented online to receive these types of calls. Plaintiff was on the line as a silent observer throughout the call and heard the entire process unfold. Once the information was "entered" in by the avatar, the call was terminated.

40.    Approximately one hour later Plaintiff received another call from a company in Texas, who spoofed its number to show Plaintiff's area code. The agent's name was Melissa and she told Plaintiff that she obtained his information from an online submission. Plaintiff corrected the agent and explained that he *never* searched for or submitted any information online regarding auto insurance and instead gave his information to a robodialer who called him on his cell phone.

41.    The agent seemed unphased when Plaintiff told her a robodialer called him and she continued to attempt to sell Plaintiff auto insurance.

42.    Plaintiff asked the agent about her company and she gave him the URL www.insurancequotes.com, which is one of the websites Defendant owns and operates.

43.    Plaintiff believes the agent was calling in conjunction with the robodialer Plaintiff had previously spoken to because the agent knew the year, make and model of Plaintiff's car and referred to Plaintiff only by his first name, not full name, which is the exact information Plaintiff had just given the robodialer an hour earlier. There is no other avenue by which the agent could have acquired this information.

44.    All calls Defendant made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1).

45.    Plaintiff has reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market its products and services without consent required by the TCPA.

46.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq*., which prohibits certain unsolicited voice and text calls to cell phones.

47.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## STANDING

48.     Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### A.  INJURY IN FACT

49.     Plaintiff's injury must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.  *Id.*

50.     For an injury to be concrete it must be a de facto injury, meaning it actually exists. In the present case, Plaintiff took the affirmative step of enrolling himself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to his telephone. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  All three of these injuries are present in this case.  *See also Chen v. Allstate Inc. Co*., 819 F.3d 1136 (9th Cir. 2016).

51.     Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the

solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.*, No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

52.     For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* at 7.  Furthermore, Plaintiff is the person who pays for the phone, and is the regular carrier and user of the phone.  All of these injuries are particular to Plaintiff.

**B. TRACEABLE TO THE CONDUCT OF DEFENDANT**

53.     Plaintiff must allege at the pleading stage of the case facts to show that his injury is traceable to the conduct of Defendant. In this case, Plaintiff satisfies this requirement by alleging that Defendant, and/or agents of Defendant on behalf of Defendant, placed illegal calls to Plaintiff's phone.

54.     In the instant case, Defendant placed calls to Plaintiff's wireless/cellular phone on at least January 31, 2019.

**C. INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

55.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by

Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

56.     Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016) and in the context of a TCPA claim, as explained by the Ninth Circuit in *Chen v. Allstate Inc. Co*., 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

### A.  CLASS ALLEGATIONS

57.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following class defined as follows (the "Classes"):

> **"DNC[2]  Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls.

> **"Artificial & Prerecorded Voice Class":** All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, during the four years prior to the initiation of this action, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

58.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant,

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

59.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

60.     Plaintiff reserves the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

61.     Plaintiff and members of the Classes were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC, and/or contacted Plaintiff and members of the Classes using a pre-recorded voice for telemarketing purposes without first obtaining prior express consent.

**B.  NUMEROSITY**

62.     The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

63.     On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

### C.  COMMONALITY AND PREDOMINANCE

64.     There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

65.     Common questions for the Classes include, but are not necessarily limited to the following:

     (a)     Whether Defendant's conduct violated the TCPA;

     (b)     Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls during the four years prior to the initiation of this action;

     (c)     Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

     (d)     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

     (e)     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

### D.  TYPICALITY

66.     Plaintiff's claims are typical of the claims of the other members of the Classes.

67.     Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

### E.  ADEQUATE REPRESENTATION

68.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions.

69.     Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

### F.  POLICIES GENERALLY APPLICABLE TO THE CLASSES

70.     This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes members, and making final injunctive relief appropriate with respect to the Classes as a whole.

71.     Defendant's practices challenged herein apply to and affect the Classes' members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

### G.  SUPERIORITY

72.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

73.     The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

74.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

75.     Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

76.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### VIOLATION OF TCPA, 47 U.S.C. § 227
### ("DNC Claim")

77.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

78.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

79.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

80.     47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

81.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

82.     Defendant made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the DNC Class never provided any form of consent to receive telephone calls from Defendant and Defendant does not have a record of consent to place telemarketing calls to them.

83.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

84.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

85.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

### SECOND CAUSE OF ACTION
#### VIOLATION OF TCPA, 47 U.S.C. § 227
#### ("Artificial & Pre-Recorded Voice Claim")

86.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

87.     Defendant made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiff's and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Class Members.

88.     Defendant made the calls without prior express written consent of the Plaintiff and Class Members.

89.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq*.

90.     Defendant's conduct invaded Plaintiff's privacy.

91.     As a result of Defendant's violations of 47 U.S.C. § 227, *et. seq*., Plaintiff and the Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

92.     Because Defendant had knowledge that Plaintiff and the Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Class Members.

93.     Plaintiff and the Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## ATTORNEYS FEES

94.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

95.     Plaintiff is entitled to recover reasonable attorney fees and requests the attorneys' fees be awarded.

## JURY DEMAND

96.     Plaintiff, individually and on behalf of the Classes, demands a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a.      An order certifying the DNC class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, HUGHES ELLZEY, LLP as lead Class Counsel;

b.      An order certifying the Artificial and Pre-Recorded Voice Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, HUGHES ELLZEY, LLP as lead Class Counsel;

c.      An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

d.      An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

e.      Injunctive relief prohibiting Defendant's conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

f.      Pre-judgment and post-judgment interest on monetary relief;

g.      An award of reasonable attorneys' fees and court costs in this action;

h.      All other and further relief as the Court deems necessary, just, and proper.


Dated:  January 14,  2020

<div style="margin-left:40%">

Respectfully Submitted,

**HUGHES ELLZEY, LLP**

/s/ *Jarrett L. Ellzey*
W. Craft Hughes
Texas Bar No. 24046123
craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@hughesellzey.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@hughesellzey.com
1105 Milford St.
Houston, TX 77006
Phone (713) 322-6387
Fax (888) 995-3335

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**

</div>